
**U.S. Department of Justice**

*United States Attorney*
*District of Maryland*
*Northern Division*

---

*Rod J. Rosenstein*
*United States Attorney*

*Christopher J. Romano*
*Assistant United States Attorney*

*36 South Charles Street*
*Fourth Floor*
*Baltimore, Maryland 21201*

*DIRECT: 410-209-4907*
*MAIN: 410-209-4800*
*FAX: 410-962-3124*
*TTY/TDD: 410-962-4462*

June 27, 2012

Jack G. Goldberg, Esquire
225 Broadway, Suite 905
New York, NY 10007

Re: <u>United States v. Donald Phillip Gayle</u>
    Crim. No. CCB-13-0144

Dear Mr. Goldberg:

This letter, together with the Sealed Supplement confirms the plea agreement which has been offered to your client Donald Phillip Gayle (Defendant) by the United States Attorney's Office for the District of Maryland ("this Office"). If the Defendant accepts this offer, please have him execute it in the spaces provided below. If this offer has not been accepted by July 10, 2013 it will be deemed withdrawn. The terms of the agreement are as follows:

### Offense of Conviction

1.      The Defendant agrees to plead guilty to the single count indictment, which charges him with possession with the intent to distribute 100 kilograms or more of marijuana, a Schedule I controlled substances, in violation of 21 U.S.C. §841. The Defendant admits that he is, in fact, guilty of that offense and will so advise the Court.

### Elements of the Offense

2.      The elements of the offense to which the Defendant has agreed to plead guilty, and which this Office would prove if the case went to trial, are as follows:

First:      That the Defendant possessed a controlled substance <u>viz.</u> marijuana;

Second:     That the Defendant knew that he possessed a controlled substance;

Third:      That the Defendant intended to distribute marijuana in a quantity exceeding 100 kilograms.

### Penalties

3. The maximum sentence provided by statute for the offense to which your client is pleading guilty is as follows: imprisonment for 40 years, with a minimum mandatory sentence of 5 years without the possibility of parole, followed by a term of supervised release at least 4 years and a fine of up to $5,000,000. In addition, your client must pay $100 as a special assessment under 18 U.S.C. §3013, which will be due and should be paid at or before time of sentencing. Pursuant to 18 U.S.C. § 3612, if the Court imposes a fine in excess of $2500.00 that remains unpaid 15 days after it is imposed, the Defendant shall be charged interest on that fine, unless the Court modifies the interest payment in accordance with 18 U.S.C. § 3612(f)(3). If a fine is imposed, it shall be payable immediately, unless, pursuant to 18 U.S.C. § 3572(d), the Court orders otherwise. The Defendant understands that if he serves a term of imprisonment, is released on supervised release, and then violates the conditions of his supervised release, his supervised release could be revoked - even on the last day of the term - and the Defendant could be returned to custody to serve another period of incarceration and a new term of supervised release. The Defendant understands that the Bureau of Prisons has sole discretion in designating the institution at which the Defendant will serve any term of imprisonment imposed.

### Waiver of Rights

4. The Defendant understands that by entering into this agreement, he surrenders certain rights as outlined below:

   a. If the Defendant had persisted in his plea of not guilty, he would have had the right to a speedy jury trial with the close assistance of competent counsel. That trial could be conducted by a judge, without a jury, if the Defendant, this Office, and the Court all agreed.

   b. If the Defendant elected a jury trial, the jury would be comprised of twelve individuals selected from the community. Counsel and the Defendant would have the opportunity to challenge prospective jurors who demonstrated bias or who were otherwise unqualified, and would have the opportunity to strike a certain number of jurors peremptorily. All twelve jurors would have to agree unanimously before the Defendant could be found guilty of any count. The jury would be instructed that the Defendant was presumed to be innocent, and that presumption could be overcome only by proof beyond a reasonable doubt.

   c. If the Defendant went to trial, the Government would have the burden of proving the Defendant guilty beyond a reasonable doubt. The Defendant would have the right to confront and cross-examine the Government's witnesses. The Defendant would not have to present any defense witnesses or evidence whatsoever. If the Defendant wanted to call witnesses in his defense, however, he would have the subpoena power of the Court to compel the witnesses to attend.

   d. The Defendant would have the right to testify in his own defense if he so chose, and he would have the right to refuse to testify. If he chose not to testify, the Court could instruct the jury that they could not draw any adverse inference from his decision not to testify.

e. If the Defendant were found guilty after a trial, he would have the right to appeal the verdict and the Court's pretrial and trial decisions on the admissibility of evidence to see if any errors were committed which would require a new trial or dismissal of the charges against him. By pleading guilty, the Defendant knowingly gives up the right to appeal the verdict and the Court's decisions.

f. By pleading guilty, the Defendant will be giving up all of these rights, except the right, under the limited circumstances set forth in the "Waiver of Appeal" paragraph 10 below. By pleading guilty, the Defendant understands that he may have to answer the Court's questions both about the rights he is giving up and about the facts of his case. Any statements the Defendant makes during such a hearing would not be admissible against him during a trial except in a criminal proceeding for perjury or false statement.

g. If the Court accepts the Defendant's plea of guilty, there will be no further trial or proceeding of any kind, and the Court will find him guilty.

h. By pleading guilty, the Defendant will also be giving up certain valuable civil rights and may be subject to deportation or other loss of immigration status.

5. <u>Advisory Sentencing Guidelines Apply</u>

The Defendant understands that a sentencing guidelines range for this case (henceforth the "advisory guidelines range") will be determined by the Court pursuant to the Sentencing Reform Act of 1984 at 18 U.S.C. §§3551-3742 (excepting 18 U.S.C. §§3553(b)(1) and 3742(e)) and 28 U.S.C. §§991 through 998. The Defendant further understands that the Court will impose a sentence pursuant to the Sentencing Reform Act, as excised, and must take into account the advisory guidelines range.

<u>Factual and Advisory Guidelines Stipulation</u>

6. This Office and the Defendant understand, agree and stipulate to the Statement of Facts set forth in Attachment A hereto which this Office would prove beyond a reasonable doubt and to the following applicable sentencing guidelines factors:

<u>Base Offense Level and Adjustments</u>

(a). This Office and the Defendant stipulate and agree that the applicable base offense level is a level 26, pursuant to USSG §§ 2D1.1(c)(7) and 1B1.3.

(b). This Office does not oppose a two-level reduction in the Defendant's adjusted offense level, based upon the Defendant's apparent prompt recognition and affirmative acceptance of personal responsibility for his criminal conduct. This Office agrees to make a motion pursuant to USSG § 3E1.1(b) for an additional one-level decrease in recognition of the Defendant's acceptance of personal responsibility for his conduct. This Office may oppose *any* adjustment for

3

acceptance of responsibility if the Defendant (i) fails to admit each and every item in the factual stipulation; (ii) denies involvement in the offense; (iii) gives conflicting statements about his involvement in the offense; (iv) is untruthful with the Court, this Office, or the United States Probation Office; (v) obstructs or attempts to obstruct justice prior to sentencing; (vi) engages in any criminal conduct between the date of this agreement and the date of sentencing; or (vii) attempts to withdraw his plea of guilty.

7. The Defendant understands that there is no agreement as to his criminal history or criminal history category, and that his criminal history could alter his offense level if he is a career offender or if the instant offense was a part of a pattern of criminal conduct from which he derived a substantial portion of his income.

8. The Defendant is free to argue for any offense characteristics, sentencing guidelines factors, including a departure based on role in the offense, as well as departures and/or adjustments set forth in Chapters 2, 3 or 4 of the United States Sentencing Guidelines, as well as a variance under 18 U.S.C. § 3553, upon giving the Government notice at least two weeks prior to the date of sentencing. The Government reserves the right to oppose any request(s) made by the Defendant.

## Obligations of the United States Attorney's Office

9. This Office reserves the right to bring to the Court's attention all information with respect to the Defendant's background, character, and conduct which this Office deems relevant to sentencing, including the conduct that is the subject of Count One of the Indictment. This Office will be free to recommend any sentence within the applicable guideline range.

## Waiver of Appeal

10. In exchange for the concessions made by this Office and the Defendant in this plea agreement, this Office and the Defendant waive their rights to appeal as follows:

   a)   The Defendant knowingly waives all right, pursuant to 28 U.S.C. § 1291 or otherwise, to appeal the Defendant's conviction;

   b)   The Defendant and this Office knowingly waive all right, pursuant to 18 U.S.C. § 3742 or otherwise, to appeal whatever sentence is imposed (including the right to appeal any issues that relate to the establishment of the advisory guidelines range, the determination of the defendant's criminal history, the weighing of the sentencing factors, and the decision whether to impose and the calculation of any term of imprisonment, fine, order of forfeiture, order of restitution, and term or condition of supervised release), <u>except</u> as follows: (i) the Defendant reserves the right to appeal any term of imprisonment to the extent that it exceeds an adjusted offense level 23; (ii) and this

4

      Office reserves the right to appeal any term of imprisonment to the extent that it is below an adjusted offense level 23.

c)  Nothing in this agreement shall be construed to prevent the Defendant or this Office from invoking the provisions of Federal Rule of Criminal Procedure 35(a), or from appealing from any decision thereunder, should a sentence be imposed that resulted from arithmetical, technical, or other clear error.

d)  The Defendant waives any and all rights under the Freedom of Information Act relating to the investigation and prosecution of the above-captioned matter and agrees not to file any request for documents from this Office or any investigating agency.

<u>Obstruction or Other Violations of Law</u>

11.  The Defendant agrees that he will not commit any offense in violation of federal, state or local law between the date of this agreement and his sentencing in this case. In the event that the Defendant (i) engages in conduct after the date of this agreement which would justify a finding of obstruction of justice under USSG § 3C1.1, or (ii) fails to accept personal responsibility for his conduct by failing to acknowledge his guilt to the probation officer who prepares the Presentence Report, or (iii) commits any offense in violation of federal, state or local law, then this Office will be relieved of its obligations to the Defendant as reflected in this agreement. Specifically, this Office will be free to argue sentencing guidelines factors other than those stipulated in this agreement, and it will also be free to make sentencing recommendations other than those set out in this agreement. As with any alleged breach of this agreement, this Office will bear the burden of convincing the Court of the Defendant's obstructive or unlawful behavior and/or failure to acknowledge personal responsibility by a preponderance of the evidence. The Defendant acknowledges that he may not withdraw his guilty plea because this Office is relieved of its obligations under the agreement pursuant to this paragraph.

<u>Court Not a Party</u>

12.  The Defendant expressly understands that the Court is not a party to this agreement. In the federal system, the sentence to be imposed is within the sole discretion of the Court. In particular, the Defendant understands that neither the United States Probation Office nor the Court is bound by the stipulation set forth above, and that the Court will, with the aid of the Presentence Report, determine the facts relevant to sentencing. The Defendant understands that the Court cannot rely exclusively upon the stipulation in ascertaining the factors relevant to the determination of sentence. Rather, in determining the factual basis for the sentence, the Court will consider the stipulation, together with the results of the Presentence investigation, and any other relevant information. The Defendant understands that the Court is under no obligation to accept this Office's recommendations, and the Court has the power to impose a sentence up to and including the statutory maximum stated above. The Defendant understands that if the Court ascertains factors different from those contained in the stipulation set forth above, or if the Court should impose any sentence up to the maximum established by statute, the Defendant cannot, for that reason alone, withdraw his guilty plea, and will remain bound to fulfill all of his obligations under this agreement. The Defendant understands that neither the prosecutor, his counsel, nor the Court can make a binding

prediction, promise, or representation as to what guidelines range or sentence the Defendant will receive. The Defendant agrees that no one has made such a binding prediction or promise.

### Entire Agreement

13. This letter supersedes any prior understandings, promises, or conditions between this Office and the Defendant and together with the Sealed Addendum, constitutes the complete plea agreement in this case. The Defendant acknowledges that there are no other agreements, promises, undertakings or understandings between the Defendant and this Office other than those set forth in this letter and addendum and none will be entered into unless in writing and signed by all parties.

If the Defendant fully accepts each and every term and condition of this letter, please sign and have the Defendant sign the original and return it to me promptly.

Very truly yours,

Rod J. Rosenstein
United States Attorney

By: _____
Christopher J. Romano
Assistant United States Attorney


I have read this agreement and carefully reviewed every part of it with my attorney. I understand it, and I voluntarily agree to it. Specifically, I have reviewed the Factual and Advisory Guidelines Stipulation with my attorney, and I do not wish to change any part of it. I am completely satisfied with the representation of my attorney.

7/16/13
Date

_____
Donald Phillip Gayle


I am Mr. Gayle's attorney. I have carefully reviewed every part of this agreement with him. He advises me that he understands and accepts its terms. To my knowledge, his decision to enter into this agreement is an informed and voluntary one.

7/16/13
Date

_____
Jack B. Goldberg

6

EXHIBIT A

STIPULATION OF FACTS

The undersigned parties stipulate and agree that if this case had proceeded to trial, the Government would have proven the following facts beyond a reasonable doubt. The undersigned parties also stipulate and agree that the following facts do not encompass all of the evidence that would have been presented had this matter proceeded to trial.

On December 30, 2013, Senior Trooper (STR) Marlin Meyers # 2748 of the Maryland State Police (MSP), Berlin Barrack, Worcester County, was stationary on the right shoulder of southbound U.S. Route 13 in the area of Germantown Road, Berlin, Worcester County, Maryland, in his assigned, unmarked, MSP patrol vehicle V-13. While stationary, STR. Meyers had the emergency red and blue lights on his patrol vehicle activated. It was during this time he noted a Toyota Siena van with NJ registration, traveling southbound in lane #2, the lane directly next to his vehicle. As the vehicle passed STR. Meyers location, it failed to move into an available adjacent lane, in violation of Maryland Transportation Article 21-405 el.

STR. Meyers initiated a traffic stop on the Toyota van in the area of U.S. Route 13 southbound in Worcester County, MD. STR. Meyers approached the vehicle and made contact with the operator, later identified as the Defendant. The Defendant was advised of the traffic violation and asked to produce his driver's license and vehicle registration. In producing his license and registration for the vehicle, the Defendant's hands shook uncontrollably. The Defendant stated the vehicle was a rental and provided STR. Meyers with the rental agreement, which Meyers noted the vehicle was due to be returned the day before. When questioned about this, the Defendant stated he had extended the rental. In an attempt to clarify the rental agreement, the Defendant was asked if his trip had been extended and about his points of origin and destination. The Defendant gave evasive responses, stating he was "going to Maryland" but could not provide an actual destination,

7

either an address or city in Maryland, except he had a phone number to call. The Defendant initially said he was going to stay just one night but then changed his response saying he was staying "like two days." STR. Meyers returned to his patrol vehicle and contacted MSP communications to verify driver's license information and license and to check if the driver had any outstanding warrants. A MSP trooper and a K-9 arrived and the Defendant was asked if he had any objection to a scan being conducted of the van and he replied "no." The Defendant advised that all property in the van was his. The trooper's K-9 alerted to the presence of narcotics in the Defendant's vehicle. Based on the above facts, a probable cause search for narcotics was conducted on the vehicle. The search revealed approximately 150 kilograms of marijuana. At this time the Defendant was placed under arrest.

If the case had proceeded to trial, not only would the Government had called a forensic chemist who would testify that the substance seized was in fact marijuana, a Schedule I controlled substance, but the Government would have also offered expert testimony that the quantity of marijuana seized was indicative of an intent to distribute.

SO STIPULATED:

_____
Christopher J. Romano
Assistant United States Attorney

_____
Donald Phillip Gayle

_____
Jack G. Goldberg
Counsel for Donald Phillip Gayle

7/16/13
Date